

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:MEB/AS
F. #2016R01460

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 17, 2020

By Hand and ECF

The Honorable Eric N. Vitaliano
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Roberto Finocchi
                  Criminal Docket No. 17-600 (ENV)

Dear Judge Vitaliano:

      The government respectfully submits this letter to notify the Court regarding a potential conflict involving Matthew Menchel, Esq., and Gabriela Ruiz, Esq., of Kobre & Kim, LLP, who represent the defendant Roberto Finocchi. The conflict arises from their law firm's representation of a potential co-conspirator.

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

## BACKGROUND

      On November 17, 2017 the defendant waived indictment and pleaded guilty to a single count information charging him with a violation of Title 18, Section 371. See ECF Dkt. No. 7. The defendant was, and continues to be, represented by Mr. Menchel and Ms. Ruiz, who are employed by Kobre & Kim. The government is aware that one of the defendant's potential co-conspirators — a target of the investigation who is expected to be formally charged in the coming weeks — is represented by another team of attorneys from Kobre & Kim. All of the Kobre & Kim attorneys are aware of the target's identity and the nature of the conflict. After the government raised this issue to defense counsel, Kobre & Kim instituted a firewall between the two teams and has represented to the government that

the attorneys on the respective teams will not communicate with each other about the investigations or collaborate in any way in their defenses.

## DISCUSSION

I. Applicable Law

   A. Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

   1. Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). As described more fully below, the Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

2.     Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

3.     Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual

3

representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

  B.  <u>Relevant Potential Conflicts</u>

    1.  <u>Joint Representation</u>

"Rule 44(c) establishes a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." <u>United States v. Aiello</u>, 814 F.2d 109, 112-13 (2d Cir. 1987) (quoting Fed. R. Crim. P. 44 advisory committee notes (1979 amendment)). Under Rule 44(c)(1), joint representation occurs when "two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13" and "the defendants are represented by the same counsel, or counsel who are associated in law practice." When this occurs, "[t]he court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44(c)(2); <u>see also</u> <u>United States v. Gambino</u>, No. 96 CR 1269, 1997 WL 32807, at *1 (2d Cir. Jan. 9, 1997) (unpublished opinion) (Rule 44(c) requires "a district court to inquire into the possibility of conflict of interest when co-defendants are represented by the same counsel." (citing <u>Levy</u>, 25 F.3d at 153 n.6)).

"To fulfill this so-called 'inquiry' obligation, the court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from any conflict." <u>Gambino</u>, 1997 WL 32807, at *1 (citing <u>Levy</u>, 25 F.3d at 153). In doing so, the court is generally entitled to rely on the representations of defense counsel that no conflict exists, even if those representations later turn out to be incorrect. <u>See id</u>. (citing <u>Levy</u>, 25 F.3d at 154). "Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2). Rule 44(c) "does not eliminate the defendant's power to waive his right to be represented by a conflict-free attorney." <u>Curcio</u>, 680 F.2d at 887. "Given the constitutional dimension of the defendant's right to counsel of his own choosing, if the defendant makes a knowing and intelligent election to pursue that right in preference to his right to an attorney of undivided loyalty, disqualification would not protect the Sixth Amendment right that the defendant asserts and would not be 'appropriate.'" <u>Id</u>. at 888.

    2.  <u>Representation of Co-Conspirator</u>

An attorney's representation of a co-conspirator presents an inherent conflict of interest. A serious conflict may also arise if the defendant wished to cooperate with the government's investigation and testify as to facts inculpating the other client. <u>See</u> <u>Locascio</u>, 6 F.3d at 931; <u>United States v. Iorizzo</u>, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is

4

because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295. Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

That means that, in representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently").

The duty of loyalty to his other client thus effectively precludes a lawyer from vigorously cross-examining the other client or commenting on his credibility, which may be essential to the effective representation of the present client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests" — a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

C. Waiver

Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to

5

effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

II.     Analysis

A potential conflict exists here because attorneys at Kobre & Kim represent defendants in related cases. See Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005) (noting that "an attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences"). The government is aware that the defendant and the potential co-conspirator each have information relevant to the charge or charges against the other, and separately, that their respective lawyers may feel constrained at sentencing in arguing the relative culpability of their respective clients. Accordingly, the government respectfully submits that the Court should conduct a Curcio hearing at which the Court advises the defendant as to the potential conflicts and permits the defendant to waive such potential conflicts, if he chooses to do so, with conflict-free Curcio counsel available for consultation.[1]

III.    Proposed Questions

In the event the Court determines that the defendant can waive the potential conflicts of interest, the government proposes that the Court advise the defendant as follows:

> I am advised that your attorneys are currently employed by Kobre & Kim LLP, a law firm which currently represents a target in this investigation, who the government has informed the Court is one of your co-conspirators. Kobre & Kim has certain ethical obligations to this other client. For example, it might be a conflict of interest for your attorneys to investigate leads, introduce evidence or make arguments on your behalf that

---

[1] If the defendant waives the potential conflict of interest and keeps Kobre & Kim as counsel, the government will request that the Court conduct a similar inquiry if and when the co-conspirator is charged, and the case is assigned to this Court pursuant to Local Rule 50.3.2(b)(1).

6

might tend to incriminate the other client or be contrary to his interests.

Kobre & Kim also may have privileged or confidential information from the other client that could assist in your defense but that Kobre & Kim could not disclose or use on your behalf. It also is possible that your attorneys could take positions to your advantage with respect to your relationship with your co-conspirators or your relative culpability in the crimes charged against you, but they may be constrained in taking such positions if they were not advantageous to Kobre & Kim's other client.

Relatedly, Kobre & Kim represented to the government that the team of lawyers and related personnel representing you and the team representing your co-conspirator would not collaborate in any way in your defenses or even share information they learn about the investigations. Attorneys other than yours would be free to communicate about your case with the other Kobre & Kim team. That means if your co-conspirator's team would like to share information with your team (or vice versa) it would not be able to do that if you maintain your current attorneys.

There may be other issues, in addition to the ones that I've just described, that could arise in which your attorneys' ability to do certain things might be affected by Kobre & Kim's representation of another client in a related case. No one can foresee every possible conflict of interest.

You have the right to be represented by an attorney or attorneys who do not have any potential conflicts of interest in representing you at all stages of this case, including at sentencing. If you proceed with your attorneys, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorneys?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorneys. Do you understand that? Have you done so?

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

7

>You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyers or with another lawyer before you advise the Court what you wish to do.
>
>If you do not need additional time, please tell me whether you wish to waive the potential conflicts of interest and continue with the representation of Mr. Menchel and Ms. Ruiz, or alternatively, if you wish to seek new counsel with no potential conflicts of interest.

## CONCLUSION

For the foregoing reasons, the Court should notify the defendant of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise the defendant regarding his right to conflict-free representation and determine if he can waive those rights.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
Whitman G.S. Knapp
Mark E. Bini
Andrey Spektor
Assistant U.S. Attorneys
(718) 254-6107/8761/6475

cc: Clerk of Court (ENV) (by ECF)
Gabriela Ruiz, Esq. (by e-mail)
Matthew Menchel, Esq. (by e-mail).